UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:  }
        }
DELORIS V. VICTORIA,  }
        }  Case No. 10-42087-JJR-13
    Debtor.  }
        }

_____

**OPINION AND ORDER GRANTING MOTION TO DISMISS**

On September 25, 2006, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code[1] in United States Bankruptcy Court for the Middle District of Alabama ("BCMD") — Case No. 06-31225 (the "2006 Case"). In the 2006 Case, Greenville Hospital Corporation, a creditor, filed a Motion to Dismiss Case For Abuse Under § 707 (2006 Case Doc. 53).[2] With respect to the Hospital's motion, the BCMD considered whether there existed a presumption of abuse pursuant to § 707(b)(2). For such a presumption to exist, two elements must exist. First, a chapter 7 debtor's obligations must be primarily consumer debts. § 707(b)(1).[3] Second, the debtor's income must be not less than an amount calculated under the formula prescribed in § 707(b)(2)(A).[4]

---

[1] 11 U.S.C. § 101 *et seq*, and herein the Code. Citations to sections, subsections and other subdivisions of the Code are preceded by the symbol "§."

[2] In the instant case, Greenville Hospital filed a transcript of the hearing held in the 2006 Case during which the BCMD considered on the Hospital's motion to dismiss. (Doc. 36, Exh. A).

[3] To the extent pertinent to the 2006 Case and the instant case, § 707(b)(1) states that "the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter."

[4] To the extent pertinent to the 2006 Case and the instant case, § 707(b)(2)(A) states that "[i]n considering . . . whether the granting of relief would be an abuse . . . , the court shall

Regarding the first element, the BCMD concluded that the Debtor's obligations were primarily consumer debts, and as to the second element, it was undisputed that the Debtor's income was greater than the threshold set by § 707(b)(2)(A) for the presumption to arise. Thus, the BCMD ruled that the presumption did exist, and that it would have been an abuse to grant the Debtor relief under chapter 7. On June 27, 2007 the Hospital's motion to dismiss was granted. (Doc. 36, Exh. A, p. 4, lines 1-17; 2006 Case Doc. 70). Additionally, the BCMD was highly critical of the Debtor's lack of candor and cooperation, and described her bankruptcy as "a poster-child case for substantial abuse." (Doc. 36, Exh. A, p. 3, lines 10, 11).

The Debtor appealed the BCMD's order of dismissal to the United States District Court for the Middle District of Alabama. *In re Victoria*, 389 B.R. 250 (M.D. Ala. 2008). The District Court affirmed the dismissal of the 2006 Case, but not based on a presumption of abuse under §§ 707(b)(1) and (2). The District Court found it was premature for the BCMD to have determined whether the Debtor's obligations were primarily consumer debts. In particular, the District Court found that the record was not sufficient to determine how to classify a $38,967.36 claim owing to the IRS. If that claim were classified as a consumer debt, the Debtor's obligations would have been primarily consumer debts and, therefore, the 2006 Case would have been subject to dismissal under § 707(b)(1) because the presumption of abuse arising under § 707(b)(2)(A) had not been rebutted. On the other hand, if the IRS claim was not a consumer debt, then the 2006 Case was not subject to dismissal pursuant to § 707(b)(1). Nonetheless, the District Court held that the BCMD's findings

---

presume abuse exits if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of — (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater;. or (II) $10,000."

were sufficient to support dismissal on the basis that the 2006 Case was filed in bad faith pursuant to § 707(b)(3)(A), effectively mooting any issue regarding whether there was a presumption of abuse under § 707(b)(2)(A). In any event, with respect to the instant case, this Court does not have to make such a close call with regard to the correct classification of the Debtor's debts.

On July 23, 2010, approximately three years after the 2006 Case was dismissed, the Debtor again sought bankruptcy relief by filing a petition under chapter 13 in the Northern District of Alabama. The Debtor reported annualized current monthly income of $304,360.80 in Official Form 22C, which was substantially more than the applicable median family income of $47,904. (Doc. 73). Hence, any plan proposed by the Debtor was required to have a commitment period of five years. § 1325(b)(4). While this case proceeded under chapter 13, the Debtor filed eight different plans (Docs. 6, 19, 58, 70, 83, 108, 119, 122), none of which were confirmed. The various plans proposed monthly payments ranging from $500 to $2,124, and although the last two plans proposed the greater sum, they provided that all payments would stop in September 2013, several months before the end of the mandatory five year commitment period.[5]

The Debtor amended her schedules five times. (Original Doc. 26; amendments Docs. 39-40, 72, 84, 107, 120). The average monthly income reported by the Debtor for herself and her husband — they are both medical doctors — on the original and amended Schedules I varied from $5,325.93 to $8,329.68 — substantially less than the $25,363.40 reported as current monthly income in Official

---

[5] The plan of an above-median debtor, like the Debtor in this case, may provide for a commitment period shorter than five years only if the plan will pay secured creditors in full. § 1325(b)(4)(B). No plan proposed by the Debtor provided for the full payment of unsecured creditors.

3

Form 22C.[6] And her original and amended Schedules J reported monthly net incomes that varied from a low of $502.93 to a high of $1,558.61 — substantially less than the $12,057.08 reported as monthly disposable income in Official Form 22C.[7]

On March 25, 2011, after failing to achieve confirmation of a plan under chapter 13 (Doc. 131), the Debtor converted her case to chapter 7 (Doc. 128). As it had done in the 2006 Case, Greenville Hospital, now known as Community Health Systems, responded by filing a Motion to Dismiss Debtor's Case For Abuse pursuant to § 707(b). (Doc. 145). Recall that § 707(b)(1) provides that a chapter 7 case filed by a debtor whose obligations are primarily consumer debts, may be dismissed if the court finds that granting relief would be an abuse. And under § 707(b)(2)(A) there is a presumption of abuse if the Debtor's income is greater than a certain level. There is no dispute about the Debtor's income being above the § 707(b)(2)(A) threshold for the presumption of abuse to arise; the threshold is exceeded whether the Debtor's income is measured through the means test in Official Form 22C or as reported in Schedule I. However, the Debtor contends that § 707(b)(1)

---

[6]According to testimony proffered by the Debtor's counsel, both the Debtor and her husband are physicians. Counsel further proffered that the husband had retired and the Debtor had changed her place of employment, resulting in decreased income.

[7]It appears the Debtor's maneuvering in the instant case closely resembled that in the 2006 Case. In that regard the BCMD had the following to say:

> I am going to note a couple of things. When a debtor files bankruptcy, it is incumbent on him or her to be forthright and forthcoming with the court, with creditors, with the parties-in-interest. And I have noticed that we have had multiple amendments to the schedules. I have gotten a real sense that the debtor is playing hide-the-ball and being uncooperative, and that's certainly a factor in my view.

Doc. 36, Exh. A, p. 3, lines 19-25.

4

is not applicable because her debts are not "primarily consumer debts." If the Debtor's contention is not correct, then this case will be subject to dismissal under § 707(b)(1) if the Court finds that granting relief under chapter 7 would be an abuse, and perhaps more important, because of the Debtor's income level, there will be a presumption of abuse under § 707(b)(2)(A) that may only be rebutted by a demonstration of special circumstances. § 707(b)(2)(B).

The Debtor scheduled Brantley Bank and Trust Company's mortgage at $318,864.00 (Doc. 26, Schedule D), but the Bank's uncontested proof of claim was in the amount of $343,999.06. (Claim No. 1). The proof of claim covered two loans: the $322,867.61 mortgage loan, and a $21,131.45 loan secured by accounts receivable, inventory and office equipment, the latter being unquestionably non-consumer. Nonetheless, whether based on the total of all claims filed in this case — $572,834.06 — or the total of all debts scheduled by the Debtor — $512,769.54 — the Bank's mortgage, in the amount scheduled by the Debtor or in the amount claimed by the Bank, constitutes over 50% of the total debts. Thus, if the mortgage is a consumer debt, then the debts in this case are primarily consumer debts, and not only will this case be subject to dismissal for abuse under § 707(b)(1), a presumption of abuse will arise under § 707(b)(2)(A).

The Court can glean from the copy of the mortgage filed with the proof of claim that the debt secured by the mortgage was incurred by the Debtor and her husband in 1998 in the original amount of $431,062.70. The Debtor conceded in the 2006 Case that the mortgage was a consumer debt. Nonetheless, she now argues that although the mortgage was a consumer debt in the 2006 Case, it should no longer be so classified in the instant case.[8] The Debtor contends that because the

---

[8] In the 2006 Case, the Debtor claimed her only consumer debt was the Bank's mortgage. 389 B.R. at 252.

mortgaged property is no longer her personal residence, and because the repayment terms were modified, the mortgage obligation no longer constitutes a consumer debt.[9]

"Consumer debt" is defined in § 101(8) as "debt incurred by an individual primarily for a personal, family, or household purpose." The operative word in that definition is *incurred*. The Debtor does not dispute that she and her husband originally incurred their obligation for the Bank's mortgage loan for personal, family and household purposes. The fact that the mortgaged property is no longer used for consumer purposes, or that the payment terms were modified does not turn back the clock and change the purpose for which the debt was incurred. A debt is "incurred" only once, and that is when a debtor becomes liable for its payment. With respect to the mortgage owing to Brantley Bank, that debt was incurred in 1998 for consumer purposes.

The court in *In re Bertolami*, 235 B.R. 493, 496-97 (Bankr. S.D. Fla. 1999), held that a debt incurred to build the residence of a debtor was a consumer debt notwithstanding that the debtor converted the residence to rental property before filing chapter 13. Likewise, the bankruptcy court in *In re Lemma*, 393 B.R. 299, 302 (Bankr. E.D.N.Y. 2008) held that with respect to a debt secured

---

[9]Attached to Brantley Bank's proof of claim was a copy of an instrument dated February 17, 2010, signed by the Debtor and her husband, entitled "Simple Interest Fixed Rate Note/Disclosure and Security Agreement" (the "renewal note"). A provision in renewal note stated: "THE PURPOSE OF THIS LOAN IS: PERSONAL."(emphasis in the original). Moreover, it recited that it was a "RENEWAL NOTE ON REAL ESTATE MORTGAGE RECORDED IN JUDGE OF PROBATE OFFICE, BUTLER COUNTY, AL IN BOOK 361, P.51 ON JANUARY 13, 1998" — the same recording information and date that appeared on the Mortgage.
    It is apparent that the renewal note reflected the modification the Debtor now argues changed the underlying mortgage obligation to a non-consumer debt. This argument is contrary to her written expression in the renewal note that the "LOAN IS: PERSONAL." In any event, what happened on February 17, 2010 — the date of the renewal note — is irrelevant because it did not change what happened in 1998 when the mortgage obligation was *incurred* as a consumer debt.

6

by a mortgage on a personal residence, for the purposes of § 101(8), "[t]he only requirements that the debt must meet under the statutory definition is that it is incurred by an individual and primarily for a personal, family, or household purpose." The Bankruptcy Court for the Southern District of Florida held in *In re Bertolami*, 235 B.R. 493, 497 (Bankr. S.D. Fla. 1999) that:

> '[T]he test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family or household purposes, is whether it was incurred with an eye toward profit.' . . . the Bartolamis executed the note and residential mortgage with the intention of using the Subject Property as their home . . . the Subject Property ceased to be their home approximately three years prior to the Petition Date . . . . The fact that the Bartolamis no longer reside at Subject Property and no longer consider it to be their homestead does not change the circumstances under which that debt was originally *incurred*.

*Id.* (*quoting In re Booth*, 858 F.2d 1051, 1054 (5th Cir. 1988)). *See also Zolg v. Kelly (In re Kelly)*, 841 F.2d 908 (9th Cir. 1988).

The Court concludes that the Bank's mortgage debt was incurred for personal, family and household purposes, and therefore constitutes a consumer debt. Thus the Debtor's debts are primarily consumer debts under § 707(b)(1), and the presumption of abuse arises under § 707(b)(2)(A). There was no evidence offered to rebut the presumption, much less any special circumstances as required by § 707(b)(2)(B). Additionally, considering the totality of the circumstances, especially the Debtor's history in the 2006 Case and during the instant case while it languished in chapter 13, coupled with her proven ability to earn a substantial income that could fund a plan and provide a meaningful payment to unsecured creditors, and her refusal to propose such a plan, this Court would find abuse under § 707(b)(3)(B) — the totality of the circumstances — regardless of whether the presumption arose under § 707(b)(2)(A).

Accordingly, it is hereby ORDERED that the motion to dismiss (Doc. 145) filed by

7

Community Health Systems is GRANTED and this case shall be DISMISSED.

At the conclusion of the hearing on the motion to dismiss, Debtor's counsel informed the Court that if the motion was granted, the Debtor intended to appeal. Counsel made an oral motion on the record for the Court to stay its order pending appeal. Stays pending appeal of a bankruptcy court's judgment or order in a contested matter are governed by Rule 8005 of the Fed.R.Bankr.P. In pertinent part that Rule provides that "the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest."

The law for granting or denying a stay pending appeal is the same as for granting a preliminary injunction.[10] The following are the four factors that should be considered in determining whether a stay should be granted:

1. Whether the movant has shown a likelihood of success on the merits;

2. Whether the movant has made a showing of irreparable injury if the stay is not granted;

3. Whether the granting of the stay would substantially harm the other parties; and

4. Whether granting the stay would serve the public interest.[11]

The Debtor has failed to satisfy any of the four factors that would support staying dismissal of her case. It is difficult for this Court to anticipate any grounds on which an appellate court will find that granting relief in this case under chapter 7 would not be a substantial abuse. If a stay is not granted, then the Debtor will lose the protection of the automatic stay under § 362(a) which she has

---

[10]*In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294 (7th Cir. 1997).

[11]*In re Gulf States Steel, Inc.*, 285 B.R. 739 (Bankr. N.D. Ala. 2002).

8

enjoyed for almost one year in this case and before that for several months during the 2006 Case. Creditors have been held at bay during this case (and previously during the 2006 Case), while the Debtor was given ample opportunity to obtain a chapter 7 discharge or propose a confirmable plan while in chapter 13, but she has failed to do so. The Court concludes that the harm to creditors by staying the dismissal and thus leaving the automatic stay in place outweighs any harm to the Debtor. No public interest would be served by either granting or denying a stay on appeal. Accordingly, the Debtor's motion seeking a stay pending appeal is hereby DENIED.

Dated: June 22, 2011

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge